# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. SA CR 06-260 DOC |
| Plaintiff(s), | ) | |
| | ) | **O R D E R** DENYING |
| v. | ) | **DEFENDANT'S MOTION FOR** |
| | ) | **RECONSIDERATION OF** |
| STEVEN VU HOANG, | ) | **DEFENDANT'S MOTION TO** |
| Defendant(s). | ) | **DISMISS** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

Before the Court is Defendant's Motion for Reconsideration of Defendant's Motion to Dismiss ("Motion"). After reviewing the moving, opposing, and replying papers, as well as oral argument by the parties, and for the reasons set forth below, the Court DENIES Defendant's Motion.

## I.    BACKGROUND

On August 2, 2006, United States Magistrate Judge Marc L. Goldman signed a search warrant authorizing law enforcement officers to search Defendant's residence in Westminster, California, ("Residence") based on an affidavit ("Affidavit") signed by Bureau of Alcohol,

1   Tobacco, Firearms & Explosives ("ATF") Special Agent Scott Brahin ("Brahin").  Def.

2   Suppression Mot., Ex. B.  The Affidavit establishes facts in support of the issuance of the

3   August 2, 2006 search warrant.  *See id.*

4        **A.    Affidavit**

5        Brahin has been employed by the ATF since 2004 and was a criminal investigator for the

6   Secret Service prior to his current employment.  *Id.* at ¶ 1.  His duties include the investigation

7   of criminal federal firearms violations.  *Id.*  Brahin explains that, in his experience, persons who

8   possess firearms "usually possess other firearms and items related to firearms such as: gun cases,

9   ammunition, ammunition magazines, holsters, spare parts, cleaning equipment, photographs of

10  firearms, and receipts for purchase of these items."  *Id.* at ¶ 16.  Furthermore, Brahin explains

11  that "[f]irearms are maintained as items of value and are usually kept at a person's residence, or

12  in places that are otherwise readily accessible to the person, such as the person's vehicle," that

13  "[m]ost people store their firearms in their homes," that "[m]any people also keep mementos of

14  their use of firearms including photographs or videotapes of themselves possessing or using

15  firearms," and that "most people do not dispose of their firearms and usually maintain them for

16  long periods of time in a secure location within their residence."  *Id.*

17        The Affidavit further provides evidence linking Defendant to illegal firearms purchases.

18  On July 13, 2006, Brahin interviewed a confidential source ("CS") who worked for a licensed

19  firearms dealer, Citadel Gun and Safe ("Citadel").  *Id.* at ¶ 8.  CS attended the Las Vegas,

20  Nevada Claude Hall gun show to sell firearms on Sunday, July 9, 2006, where CS was

21  approached by Defendant and an unidentified Asian male ("FNU LNU").  *Id.* at ¶ 8(a).

22  Defendant asked CS if Citadel sold firearms via "private party."  *Id.* at ¶ 8(b).  CS replied that

23  any sales from Citadel would have to go through the National Instant Check System, at which

24  time Defendant stated that "he didn't want to have any background search conducted on him."

25  *Id.*  Defendant then inquired whether CS personally had any firearms to sell Defendant via

26  "private party."  *Id.* at ¶ 8(c).  CS asked Defendant to meet at another location in the hall to

27  discuss the matter further.  *Id.*  CS then met with Defendant and FNU LNU at a location

28  approximately 100 feet away from the Citadel booth.  *Id.* at ¶ 8(d).  As identification, Defendant

1    produced a photocopy of a Nevada driver's license bearing Defendant's image, his date of birth,

2    and a Reno, Nevada address.  *Id.*  CS also observed a California driver's license in Defendant's

3    wallet.  *Id.*  FNU LNU asked CS if he would get in trouble for purchasing the firearm and

4    bringing it back to California, at which point Defendant told FNU LNU to be quiet.  *Id.* at ¶ 8(e).

5    Defendant purchased from CS a Romanian WASR-10 AKM assault rifle clone for $450.  *Id.* at ¶

6    8(f).  CS observed that Defendant seemed eager to buy the rifle and did not haggle over the

7    price.  *Id.*  The receipt of purchase was made out to Defendant.  *Id.* at ¶ 8(g).  CS observed

8    Defendant querying other dealers at the gun show to sell via "private party," and CS and his/her

9    spouse observed Defendant purchasing multiple additional firearms.  *Id.* at ¶ 8(h).  Brahin

10   showed CS a Californian DMV photo of Defendant and CS stated that he/she was "100%"

11   certain that the person in the photo was the individual CS sold the rifle to at the gun show.  *Id.* at

12   ¶ 9.

13         Brahin conducted surveillance at 9382 Salem Avenue, Westminister, California,

14   ("Residence") the address listed on Defendant's California driver's license.  *Id.* at ¶ 12.  Brahin

15   observed a 1998 Honda sedan parked in front of the Residence.  *Id.* at ¶ 12-13.  The vehicle was

16   registered to Defendant at the address of the Residence.  *Id.* at ¶ 14.  In addition, a mail carrier

17   from the United States Postal Service confirmed that Defendant receives his mail and lives at the

18   Residence.  *Id.* at ¶ 15.

19         Brahin sought and obtained permission to search the Residence for evidence, including

20   firearms; ammunition; magazines and other firearm components; documentation of the purchase,

21   storage, possession, disposition, dominion and control of firearms; other items pertaining to

22   firearm possession; records of dominion and control over the Residence; and records pertaining

23   to Defendant's Las Vegas trip on or about July 9, 2006.  *Id.* at ¶ 6.

24   **B.    Warrant Execution**

25         ATF agents executed the warrant on August 3, 2005.  The agents seized from the

26   Residence a SIG Sauer model P225 9 mm semi-automatic pistol, a Ruger model P95DC 9 mm

27   semi-automatic pistol, over 700 rounds of ammunition, and other firearms paraphernalia.  Gov.

28   Opp. to Suppression Mot. at 6:24-6:28.  Defendant was also interviewed after waiving his

1    *Miranda* rights and made admissions concerning his possession of the firearms.  *Id.* at 6:28-7:3.

2    **C.    Indictment**

3    A federal grand jury returned a one count indictment charging Steven Vu Hoang

4    ("Defendant") with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1)

5    ("Firearm Charge") on December 20, 2006.  The indictment charged that Defendant possessed a

6    SIG Sauer model P225, 9mm semi-automatic pistol on August 3, 2006, and that such possession

7    occurred after Defendant had been convicted of a felony offense punishable by a term of

8    imprisonment exceeding one year.  The alleged conviction was possession of marijuana for sale

9    ("Drug Charge") on May 4, 2006.  On May 4, 2006, Defendant pled guilty in the Superior Court

10   of California, County of San Diego, to a violation of Health and Safety Code § 11359 and

11   admitted that he possessed marijuana for sale and was armed with a handgun.  Def. Dismissal

12   Mot., Ex. A at 5.  At the plea hearing, Defendant was advised, "You can never again possess

13   firearms or ammunition.  Possession of a gun or a bullet is a felony.  You understand that?"

14   Government's Opp. to Dismissal Mot., Ex. A at 4.  Defendant acknowledged that he understood

15   by stating, "Yes."  *Id.*  Defendant was sentenced to 3 years probation on August 16, 2006.  Def.

16   Dismissal Mot., Ex. B at 1.

17   **D.    Motions**

18   On August 1, 2007, Defendant filed a Motion to Dismiss the Indictment ("Dismissal

19   Motion"), claiming that the Firearm Charge indictment is defective because Defendant was not

20   "convicted" for the Drug Charge at the time he possessed the firearm.  Defendant also filed a

21   Motion to Suppress Physical Evidence and Statements ("Suppression Motion") on August 1,

22   2007, seeking to suppress evidence obtained during the August 3, 2006 search, including his

23   confession.

24   In an Order dated October 19, 2007, the Court denied Defendant's Motion to Suppress

25   and denied Defendant's Motion to Dismiss the Indictment.  In the instant Motion, Defendant

26   moves the Court to reconsider the denial of Defendant's Motion to Dismiss the Indictment.

27   Defendant bases the Motion on supplemental statutory authority previously not presented by the

28   parties or considered by the Court.

4

## II.      DISCUSSION

Defendant requests that the Court reconsider the Dismissal Motion based on the California statute that prohibits a person convicted of certain crimes from possessing a firearm. Specifically, Cal. Penal Code § 12021(a)-(c) sets forth categories of convictions, including all felonies, that render a person firearms prohibited.  At subdivision (d)(2), the legislature specifies when notice of this prohibition shall be provided:

> For any person who is subject to subdivision (a), (b), or (c), the court shall, *at the time judgment is imposed*, provide on a form supplied by the Department of Justice, a notice to the defendant prohibited by this section from owning, purchasing, receiving, possessing or having under his or her custody or control, any firearm.  The notice shall inform the defendant of the prohibition regarding firearms and include a form to facilitate the transfer of firearms.  Failure to provide the notice shall not be a defense to a violation of this section.

Cal. Penal Code § 12021(d)(2) (emphasis added).  Thus, Defendant argues that this statute, which was not previously cited in the parties' papers and was not considered by the Court in its October 19 Order, indicates that conviction occurs when judgment is imposed under California law in the firearms-prohibition context.

In the Court's October 19 Order, the Court held that, under California law, conviction of a prior felony occurs at the time of a guilty plea for the purposes of prosecution under the federal felon in possession of a firearm statute at 18 U.S.C. § 922(g)(1).  The Court based its determination on the fact that the definition of a conviction under California law is context specific.  The Court concluded that, in the context presented by this case, conviction occurred on May 4, 2006, when Defendant pled guilty to the prior felony offense.  The Court now explains how Cal. Penal Code § 12021 does not change this conclusion.

As explained previously, in some cases, the term "conviction" is defined broadly to include both the jury verdict or guilty plea and the judgment under California law; in other cases, it is defined narrowly to only include the verdict or guilty plea under California law.  *People v.*

5

*Kirk*, 141 Cal.App.4th 715, 721 (2006). Specifically, in the context of civil disabilities, a conviction requires both the judgment and the ascertainment of guilt:

> [W]hen a prior conviction goes to the determination of civil consequences the conviction must be interpreted in a broader sense. A civil disability flowing from a conviction often concerns a valuable right of citizenship, and in this context, any ambiguity in the term 'conviction' is resolved in favor of the citizen. Accordingly, a 'conviction' will require not only the ascertainment of guilt, but also the judgment entered thereon.

*Id.* (internal quotations and citations omitted).  On the other hand, the ascertainment of guilt has been held to be sufficient to establish a conviction in the criminal context:

> [I]n criminal cases, courts have held an admission or finding of guilt is sufficient to establish a 'conviction.' Where the existence of a prior conviction triggers increased punishment, courts interpret 'conviction' to mean the factual ascertainment of guilt by verdict or plea.

*Id.* (internal quotations and citations omitted).

In criminal cases, the context which the California courts have examined in making their determination is the purpose of the statute.   For example, in the context of the Three Strikes law, the court determined that a defendant has a prior conviction after guilt is established by plea or verdict.  *People v. Williams*, 49 Cal.App.4th 1632 (1996).  The court did so by looking to the underlying purpose of the Three Strikes law statute:

> The focus of the three strikes law is *conduct*: did the defendant commit a felony after having previously committed one or more serious or violent felonies?  When a defendant pleads guilty to or is convicted of a felony, the law is satisfied factually that he or she committed it.  When the deterrent effect of the law fails and the defendant subsequently commits another felony, he or she becomes a

1               repeat offender and deserves harsher punishment, regardless of

2               whether judgment and sentence have been pronounced on the initial

3               offense.

4   *Id.* at 1638.  In addition, in *In re DeLong*, the court held that the term "convicted" within the

5   meaning of California Penal Code § 1210.1 meant adjudication of guilt and judgment thereon.

6   *See In re DeLong*, 93 Cal.App.4th 562 (2001).  Crucial to this holding was the purpose of

7   Proposition 36, "which is aimed at diverting nonviolent defendants from incarceration into

8   substance abuse treatment programs." *Id.* at 568.  "[T]he provisions of Proposition 36 reflect it

9   was intended to have a far-ranging application to nonviolent drug offenders." *Id.* at 569.  Again,

10   the underlying legislative purpose applicable to the statute determined when the conviction

11   occurred.  In the context of sentencing enhancements for prior convictions, the same

12   examination of purpose was conducted by the California court.  In holding that "conviction"

13   means the ascertainment of guilt through plea or verdict, the court explained that "'convicted'

14   must be given a meaning which comports with the purpose of section 667, which is aimed at

15   deterring recidivism." *People v. Shirley*, 18 Cal.App.4th 40, 46 (1993) (explaining that the

16   deterrence of recidivism required the courts to take account of prior criminal conduct).

17        In this analysis framework, it is important to look at the underlying purpose of the federal

18   felon in possession of a firearm statute at 18 U.S.C. § 922(g)(1).  Then, the Court must

19   determine how California law would define "conviction" within the context of that purpose.  The

20   Court first notes that it is possible for the definition of "conviction" to be different in the context

21   of the California firearms-prohibition statute at Cal. Penal Code § 12021 than in the context of

22   the federal statute at 18 U.S.C. § 922(g)(1), because California law takes into account the

23   purpose and context of each respective statute in determining how "conviction" is defined.  The

24   Ninth Circuit held, in *United States v. Valerio*, that a defendant could be a convicted felon for

25   purposes of the federal felon in possession statute, while at the same time not a convicted felon

26   under the New Mexico state felon in possession statute. *Valerio*, 441 F.3d 837, 842-43 (9th Cir.

27   2006).  In other words, the defendant in that case was entitled to possess firearms under state

28   law, but not under federal law. *Id.*  Furthermore, that notice is to be given "at the time judgment

1    is imposed" under Cal. Penal Code § 12021(d)(2) is alone irrelevant to the assessment of how

2    California defines "conviction" as used in 18 U.S.C. § 922(g)(1).[1]

3          The underlying purpose of the federal felon in possession of a firearm statute leads to the

4    conclusion that "conviction," in the context of that statute, is defined narrowly to occur at the

5    verdict or guilty plea under California law.  As explained in *Valerio*:

6          In Congress' view, existing state laws 'provide less than positive

7          assurance that the person in question no longer poses an

8          unacceptable risk of dangerousness.'  Congress meant to keep guns

9          away from all offenders who, the Federal Government feared, might

10         cause harm, even if those persons were not deemed dangerous by

11         States.

12    *Valerio*, 441 F.3d at 843 (internal citations removed).  Thus, the purpose of the statute is to

13    prevent those who pose a risk of dangerousness from possessing a firearm.  An individual's

14    dangerousness stems from that individual's conduct.  If an individual has been found guilty by a

15    jury or admitted guilt in a plea, this factual ascertainment of guilt is indicative of conduct that

16    increases the likelihood of dangerousness.  Whether or not judgment has been entered has no

17    bearing on dangerousness.  Rather, the focus is conduct, just like the focus in *Williams* and

18    *Shirley*.  *See Williams*, 49 Cal.App.4th at 1638; *Shirley*, 18 Cal.App.4th at 46.  Thus, just as the

19    purposes of the Three Strikes law and Cal. Penal Code § 667 lead to the conclusion that

20    "conviction" occurs at the factual ascertainment of guilt in those contexts, the purpose of 18

21    U.S.C. § 922(g)(1) leads to the same conclusion under California law.  Again, the notice

22    requirement and context of the state firearms-prohibition statute are irrelevant where, as here, the

23    federal firearms-prohibition statute can be seen as more protective.  Under California law,

24

25

26          [1]It is also noteworthy that the crux of Cal. Penal Code § 12021(d)(2) is to define the required notice and the timeframe for that notice.  In the present action, Defendant was clearly given notice during his guilty plea, which he acknowledged.  Thus, it appears

27    that the state court judge also believed that the right for Defendant to possess firearms

28    terminated at the factual ascertainment of guilt, and so did Defendant.

legislative intent and the underlying purpose of a statute are taken into account for determining how "conviction" is defined; in this case, the legislative intent and purpose to be considered are those of Congress when enacting 18 U.S.C. § 922(g)(1).  Within the context of this purpose, California law defines "conviction" to occur at the factual ascertainment of guilt.[2]

In closing, the provisions under Cal. Penal Code § 12021 do not change the Court's conclusion.  Defendant was convicted of the Drug Charge on May 4, 2006 for the purposes of subsequent prosecution under 18 U.S.C. § 922(g).  Accordingly, he had been convicted of a felony offense punishable by a term of imprisonment exceeding one year on August 3, 2006, the date he was found in possession of a firearm.  This holding is consistent with *U.S. v. Tankersley*, in which the Nebraska District Court analyzed the same question, also under California law, and reached the same conclusion.  *See Tankersley*, 269 F.Supp.2d 1178 (D. Neb. 2003).

## III.   DISPOSITION

For the reasons stated above, the Court DENIES Defendant's Motion for Reconsideration of Defendant's Motion to Dismiss.

IT IS SO ORDERED.

DATED: March 17, 2008

_____
DAVID O. CARTER
United States District Judge

---

[2]Certainly, Congress could not have intended to create a safe period between ascertainment of guilt and judgment, during which an individual would be incentivized to gather and possess firearms, knowing that his or her right to possess firearms would only be terminated after judgment.  Such a period would also encourage that individual to delay sentencing as much as possible in order to maximize the time period.  A contrary holding by the Court would severely undermine Congress' purpose of preventing dangerous individuals from possessing firearms.